IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEAH CHRISTINE GARBISCH,

           Plaintiff,

v.                                                                              OPINION and ORDER

ANDREW M. SAUL,                                                    20-cv-572-jdp
    Commissioner of the Social Security Administration,

           Defendant.[1]

---

Plaintiff Leah Christine Garbisch seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Garbisch not disabled within the meaning of the Social Security Act. Garbisch contends that administrative law judge Ahavaha Pyrtel (ALJ) erred by failing to adequately weigh the opinion evidence. Garbisch also says that the Appeals Council erred by refusing to consider new evidence that Garbisch submitted after the ALJ issued her decision. The court is not persuaded that either the ALJ or the Appeals Council erred. So the court will affirm the ALJ's decision and cancel the hearing scheduled for April 8, 2021.

ANALYSIS

Garbisch sought benefits based on both physical and mental impairments, alleging disability beginning in 2017, when she was 30 years old. R. 59, 71.[2] In a June 2019 decision,

---

[1] The captions of Garbisch's briefs identify her first name as "Lean," but the complaint and other documents in the record use the spelling above.

[2] Record cites are to the administrative transcript, located at Dkt. 7.

the ALJ found that Garbisch suffered from several severe impairments: peripheral neuropathy, obesity, depression, and anxiety. R. 61. The ALJ ascribed to Garbisch the residual functional capacity (RFC) to perform light work, with additional mental health restrictions. R. 63. Based on the testimony of a vocational expert, the ALJ found that Garbisch was not disabled because she could work in jobs available in the national economy, including as a housekeeper or cleaner.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

**A. Reviewing consultant's opinion**

Garbisch contends that the ALJ erred by crediting the mental limitations found by psychological consultant Mary Ellen Menken but then failing to account for all those limitations in the RFC. This contention relates to a worksheet that Menken filled out as part of an assessment of Garbisch's mental residual functional capacity. As noted in *Varga v. Colvin*, 794 F.3d 809, 811 (7th Cir. 2015), the worksheet the consultant used has different sections. In one section, the consultant is asked to rate the claimant's functioning in several, predetermined categories, with ratings such as "not significantly limited," "moderately limited," and "markedly limited." R. 118–20. After each group of functional categories, the consultant

is directed to "explain in narrative form" the limitations she chose. *Id.* The directions for the worksheet explain that the ratings "help determine the individual's ability to perform sustained work activities." R. 118. But "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." *Id.* In other words, the narrative is meant to translate the ratings into specific functional limitations.

In this case, Menken found that Garbisch was "moderately limited" in several categories related to concentration, persistence, pace and social interaction, including:

- working in coordination with or proximity to others without being distracted by them;

- completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;

- accepting instructions and responding appropriately to criticism from supervisors;

- getting along with coworkers without distracting them or exhibiting behavioral extremes;

- responding appropriately to changes in the work setting.

R. 118–19.

In the narrative portion of the worksheet, Menken wrote that Garbisch would be able to: "sustain attention, persistence, & pace adequately to perform simple tasks for 2-hour periods," "manage basic work-related social interactions with supervisors, coworkers, & the public adequately," "respond appropriately to basic supervisory instruction & criticism," and "respond appropriately to simple, routine changes in the work setting." *Id.* In the RFC, the ALJ stated that Garbisch "can perform simple and routine tasks (at a reasoning level of three (3))

3

with occasional contact with co-workers and the public and occasional changes in the work setting." R. 63.

Garbisch says that the ALJ failed to either incorporate or discuss the moderate limitations that Menken found related to: (1) working with others; (2) pace; (3) contact with supervisors; and (4) adapting to changes. But the ALJ *did* include restrictions in the RFC related (1) and (4), limiting Garbisch to "occasional contact with co-workers" and "occasional changes in the work setting." R. 63. Garbisch doesn't explain why those restrictions are inadequate, and she doesn't address them at all in her reply brief, so she hasn't shown that the ALJ was wrong about those two restrictions.

As for the limitations related to pace and contact with supervisors, those didn't need to be incorporated into the RFC because Menken explained in her narrative that Garbisch can adequately manage "basic work-related social interactions" with supervisors and work on simple tasks at an adequate pace for two hours at a time. Garbisch doesn't contend that the RFC is inconsistent with the narrative or that the jobs identified by the vocational expert require an employee to have greater abilities than those described in the narrative.

Garbisch argues instead that the ALJ was required to account for Menken's more general ratings of "moderate limitations," either by adopting them or explaining why she declined to do so. She relies on *DeCamp v. Berryhill*, in which the court stated that "an ALJ may rely on a narrative explanation, [but] the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." 916 F.3d 671, 676 (7th Cir. 2019). The "check-box sections" for the worksheet mentioned in *DeCamp* are similar to the ratings discussed in this opinion for general categories of limitations. But *DeCamp* isn't on point. The

4

problem in *DeCamp* was that the narrative section simply didn't account for some of the more general ratings. That's not what happened in this case. The ALJ and Menken didn't ignore the ratings for the general categories; rather, Menken translated the ratings into more specific findings in the narrative, which the ALJ then adopted. That approach is consistent with *Varga*, which states that "an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." 794 F.3d at 816 (7th Cir. 2015).

In her reply brief, Garbisch raises a new argument, contending that Menken's opinion was "internally inconsistent." Dkt. 15, at 14. The court understands her to be saying that it was inconsistent for Menken to find both that: (1) Garbisch has moderate limitations in sustaining pace and interacting with supervisors; and (2) Garbisch can adequately manage "basic work-related social interactions" with supervisors and work on simple tasks at an adequate pace for two hours at a time. This argument is forfeited because Garbisch didn't raise it in her opening brief. *See Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). In any event, Garbisch doesn't support the argument. It seems to be based on an assumption that a moderate limitation must always translate into a restriction in the RFC. But Garbisch cites no authority for that view, and this court has already rejected it. *See Bolin v. Saul,* No. 20-cv-348-jdp, 2021 WL 567899, at *7–8 (W.D. Wis. Feb. 16, 2021).

The meaning of "moderate" is not precisely defined in the regulations. A recent definition states only that a "moderation limitation" means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(C). So how one consultant views a "moderate" limitation may be different from another. And the court of appeals has acknowledged that having a moderate

limitation "does not mean that [a claimant] could not function satisfactorily." *Capman v. Colvin*, 617 F. Appx 575, 579 (7th Cir. 2015).

As already noted, the worksheet used by Menkin in this case explains that a consultant's ratings "help determine the individual's ability to perform sustained work activities," but "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." R. 118. So under the terms of the worksheet itself, Menken communicated her view in her narrative that whatever limitations Garbisch had related to pace and working with supervisors, they could be accommodated if Garbisch was limited to routine and simple tasks. This is like other cases in which the court of appeals found that moderate limitations didn't automatically require specific restrictions in the RFC. *See Apke v. Saul,* 817 F. App'x 252, 258 (7th Cir. 2020) (moderate limitations in ability to perform activities within a schedule, maintain regular attendance, and be reasonably punctual consistent with narrative that claimant "could tolerate normal work expectations"); *Capman,* 617 F. Appx at 579 (moderate limitation in completing a workday without interruption consistent with narrative that the plaintiff could adequately manage the stress of unskilled tasks).

The court does not see an inherent conflict between the different parts of Menken's worksheet. And Garbisch points to no evidence in the record from which Menken could have found additional limitations, so the ALJ didn't err by relying on Menken's narrative.

**B. Examining consultant's opinion**

Examining consultant Sandra Frodin found that Garbisch had moderate to marked limitations in several areas of mental functioning, and the parties assume that Garbisch would meet the requirements for disability if Frodin's findings were adopted. But the ALJ concluded that Frodin's opinion was "only partially persuasive" for several reasons: (1) some of her

6

findings related to issues outside her expertise; (2) she relied "quite heavily" on Garbisch's subjective complaints, despite good reasons for questioning Garbisch's credibility; (3) her findings were inconsistent with Garbisch's treatment history; (4) her findings were inconsistent with Garbisch's statements to treatment providers; (5) her findings were inconsistent with recent treatment notes indicating a decrease in depression symptoms; and (6) her findings were inconsistent with Garbisch's hearing testimony. R. 70.

Garbisch says that the ALJ's reasons are "suspect," Dkt. 10, at 14, but she doesn't even discuss reasons (1), (2), and (6) in either of her briefs, even after the commissioner included a lengthy discussion about those other reasons in his response brief. An ALJ's decision need not be flawless. It is enough that the ALJ "provide *some* evidence supporting her determination." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (emphasis added). Collectively, the three reasons that Garbisch doesn't challenge are more than enough to support the ALJ's decision, so the court need not decide whether the other reasons are persuasive. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (upholding ALJ's determination even though some reasons weren't supported by the record).

## C. New evidence

The ALJ issued her decision on June 21, 2019. Several months later, Garbisch submitted additional medical records to the Appeals Council. R. 9–36. Garbisch describes these records as "[n]ew evidence regarding seizures or psychogenic episodes," Dkt. 10, at 19, an issue that Garbisch says wasn't previously discussed in the medical records. The Appeals Council declined to consider the evidence because it "does not relate to the period at issue," which is November 4, 2017, to June 21, 2019. R. 2. The council informed Garbisch that she would have to file a new application if she believed that she became disabled after June 21. *Id.*

The consideration of additional evidence submitted to the Appeals Council is governed by 20 C.F.R. § 404.970, which requires the claimant to show that she has good cause for not submitting the evidence before the ALJ's decision, that the evidence is "new, material, and relates to the period on or before the date of the hearing decision," and that there is "a reasonable probability that the additional evidence would change the outcome of the decision." The Appeals Council didn't expressly consider whether Garbisch had good cause for submitting her records after the ALJ's decision. But both sides assume that a plaintiff must make that showing to the district court as well, so the court will make the same assumption.

Garbisch says that she had good cause because the additional records qualify as "rebuttal evidence." Dkt. 10, at 21. She cites a comments about the good-cause requirement in the Federal Register, which states, "if an ALJ introduces new evidence at or after a hearing, the claimant could . . . submit rebuttal evidence." 81 Fed. Reg. 90987-01, 90991 (Dec. 16, 2016). But this example of good cause doesn't apply because Garbisch doesn't identify any "new evidence" that the ALJ introduced "at or after a hearing."

In her reply brief, Garbisch says that "rebuttal evidence" includes any evidence that could "be used to rebut a finding made by the ALJ in the decision." Dkt. 15, at 22. But if that were correct, it would mean that virtually any favorable evidence would satisfy the good-cause requirement. The reason for allowing a claimant to submit late "rebuttal evidence" is that the claimant didn't have a previous opportunity to address new evidence discussed in the ALJ's decision, not to simply bolster the claimant's case.

Also in her reply brief, Garbisch cites a statement from her letter to the Appeals Council in which she said that she could not have gathered the records sooner because she was "waiting to get into the specialty clinic." R. 8. Garbisch forfeited this argument by failing to raise it in

8

her opening brief. Regardless, the letter says that Garbisch had been suffering from seizures since 2017, more than two years earlier. Garbisch provides no evidence that she had been waiting for an appointment that entire time, and she doesn't explain why she didn't discuss the seizures at the administrative hearing or with any of her treatment providers during the relevant time. So the court concludes the Garbisch didn't have good cause for failing to submit the evidence before the ALJ issued her decision.

In any event, Garbisch hasn't demonstrated a reasonable probability that the additional records would have changed the outcome of the ALJ's decision. Garbisch points to nothing in those records suggesting that the frequency or severity of Garbisch's episodes during the relevant period would support a finding of disability or even additional restrictions.

ORDER

IT IS ORDERED that that the decision of the commissioner is AFFIRMED and the April 8, 2021 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered April 5, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge